Hord vs. Miller.

CASE 19—PETITION EQUITY—SEPTEMBER 20.

# Hord vs. Miller.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A contract made in 1863 to pay for land in gold—the difference between gold and currency being taken into consideration in estimating the value of the land—will be specifically enforced in equity, whether treasury notes are a legal tender or not.

2. See the opinion for a statement of the chancellor's decree, which, though anomalous, is approved.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

On the 2d of March, 1863, Armstead Miller, for the consideration of $1,250, sold, and, on the 14th of the same month, conveyed to H. T. Hord, about 25 acres of land in Jefferson county, Kentucky, with a lien reserved and a covenant of general warranty, on the express condition of full payment of the price *as prescribed in the contract*. Three hundred dollars of the price were advanced at the date of the contract,

and two promissory notes for $475 each were executed for the residue, payable in six and twelve months. The last of these notes was expressly made payable in gold, because, as proved, that proportion of the land was sold at a gold price, which was then 72 per cent. less than Miller required in current paper.

After this last note became due, Miller refusing to accept as full payment its nominal amount in United States treasury notes, Hord filed a petition in the chancellor's court of Louisville to compel him to take the amount in such notes then tendered in court, to release his lien on the land, and to correct an alleged mistake in the condition of the warranty, and *which is denied and unproved.*

The answer, as a cross-petition, insisted on a specific execution, and sale of the land, if necessary, for enforcing it.

The chancellor, adjudging that the appellee was entitled to a specific execution, gave the appellant time to pay the gold, and warned him that, if he should fail to do so, he would be credited with the specie value of the notes tendered in court, and would be required to pay the balance in the same kind of currency at its value when the note fell due.

No such election or payment having been made, the chancellor, after the expiration of the prescribed time, decreed the sale of so much of the land as might be necessary for paying in currency the balance of the value still due after deducting the value of the tendered notes, which the appellee had agreed to take at the fixed price.

The appellant from that decree is not, in our opinion, entitled to complain of it as erroneous to his prejudice.

In considering the specific enforceability of such a contract, for the consideration especially of such an equivalent, we shall waive the question whether treasury notes are a legal tender or not. Had an action at law, instead of a petition in equity, been the chosen form of remedy, the payment would have been for the amount of the note in money, and any legal tender of the sum so adjudged would have discharged the judgment; and therefore, if United States treasury notes be a legal tender, the judgment might have been satisfied by the

payment of its amount in such notes at their nominal value, how much soever below the same sum in gold; and if such paper currency be not a legal tender, nothing but gold or silver, or their equivalent, would discharge the judgment; but, in either aspect, the appellant's promise to pay in gold for a valuable consideration received, *for the difference between paper currency and gold*, may be specifically enforced in equity like any other binding contract, the specific enforcement of which may become proper for the effectuation of full justice according to the intention of the parties; and, in this case, therefore, the constitutionality of the tender act of Congress is not involved.

The security provided by the contingent warranty, the proof of a commensurable consideration for the promise to pay gold instead of paper currency, and the express promise to pay gold, show that a specific execution was rightfully adjudged; and, as the appellant was allowed time to pay the amount of the note in gold, and warned that, unless he would do so, the value of the gold in paper currency would be adjudged against him, and enforced by a sale of the land, he has no just cause to complain of this anomalous form of the decree.

Wherefore, the judgment is affirmed.